HARRIS, Appellee,

v.

HARRIS, n.k.a. Phyillaier, Appellant.

[Cite as *Harris v. Harris* (1995), 105 Ohio App.3d 671.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 94 CA 31.

Decided Aug. 11, 1995.

*John E. Hemm,* for appellee.

*William D. Meily,* for appellant.

WOLFF, Judge.

Lisa G. Harris, now known as Lisa G. Phyillaier, appeals from a judgment and decree of divorce granted by the Miami County Court of Common Pleas as it pertains to shared parenting of the parties' minor children.

Mark Harris and Phyillaier were married on July 24, 1982. Two children, Amber and Sarah, were born during the marriage. Harris filed a complaint for divorce on December 10, 1992, and Phyillaier filed her answer and counterclaim for divorce on December 22, 1992. The parties reached an agreement on numerous issues related to the dissolution of their marriage, but several issues, including the custody of their children, remained in dispute. On March 30, 1993, the case was assigned for a hearing on August 4, 1993 before a referee.

Harris filed a "Motion for Request and Plan for Shared Parenting" on July 2, 1993, but this motion did not include a plan for shared parenting. Harris's proposal for shared parenting was filed on August 4, the date of the final hearing. The hearing proceeded on August 4 and concluded on October 6, 1993.

On December 22, 1993, the referee filed his report and recommendation. In his report, the referee recommended shared parenting in accordance with the best interests of the Harris children, but he rejected the plan Harris had submitted because its terms were too general. The referee recommended that each party be ordered to file a shared parenting plan with more specific provisions. The trial court adopted the referee's report and recommendations, despite objections from both parties, on January 21, 1994.

Pursuant to the trial court's order, Harris filed his proposed shared parenting plan on January 27, 1994, and Phyillaier filed her proposed plan on February 4. The referee issued a report and recommendation adopting Harris's shared parenting plan on April 29, 1994. Phyillaier filed objections to the referee's recommendation on May 19, 1994. On May 20, the trial court filed a final judgment decree of divorce which granted the parties' divorce and incorporated the recommendations from the referee's first, *i.e.*, December 22, 1993, report only. This entry also ordered the parties to submit specific shared parenting plans, despite the fact that, as of that date, such plans had already been filed, and stated that "the Court will thereafter issue a shared parenting order."

On June 12, 1994, the trial court put on a journal entry, which stated, "This Court's Referee having filed his report with regards to this matter, the Court in reviewing the report and any objections timely filed thereto, does hereby approve and adopt such report, and incorporates in this journal entry the facts and recommendation of such report as though fully rewritten." It appears from the record that this order served to adopt the referee's April 29, 1994, report and recommendation related to the shared parenting plans which the parties submitted after the hearing.

Phyillaier asserts four assignments of error on appeal. We address these assignments in the order which facilitates our discussion, rather than in the order of their presentation.

"I. The trial court erred in considering shared parenting as the plan for shared parenting was not timely filed."

Phyillaier contends that the trial court erred in considering shared parenting because Harris's shared parenting plan was not filed at least thirty days prior to the hearing on parental rights and responsibilities, as required by R.C. 3109.04(G). The plan was filed on the day of the hearing.

The trial court found that the filing deadline in R.C. 3109.04(G) was directory, not mandatory, and that the rule was intended "to assure an orderly procedure rather than to foreclose a litigant's options." Based upon this interpretation, the referee considered Harris's request and the plan he submitted on the day of the hearing. Phyillaier argues that the rule was not designed merely for convenience and orderly procedure but, rather, to protect her due process rights, and that she did not have adequate notice that the trial court would consider the shared parenting issue.

We agree with the trial court that the requirement in R.C. 3109.04(G) that a shared parenting plan must be filed at least thirty days prior to the hearing on parental rights and responsibilities is directory, not mandatory. In our view, this provision was not intended by the legislature to divest the trial court of a reasonable degree of flexibility in considering shared parenting plans. Within its discretion, the trial court may relieve a party of the statutory deadline and grant a party's request to file a shared parenting plan within thirty days prior to the hearing. We also agree with Phyillaier that the statutory deadline implicates her right to due process. The critical inquiry is thus whether Phyillaier had an adequate opportunity to respond to the plan so that her due process right was protected.

Harris filed a motion on July 2, 1993 requesting that the trial court consider shared parenting in the event that it did not grant him sole custody of the children. Harris did not file a shared parenting plan with this motion. Rather, the motion indicated that "the specifics of a shared parenting request would be made known to the Court at the time of the hearing herein." This motion put Phyillaier on notice more than one month in advance of the hearing on parental rights and responsibilities that shared parenting would be discussed at the hearing. She did not register any objection to the form or substance of the motion prior to the hearing.

Harris filed his shared parenting proposal shortly before the hearing began on August 4. Phyillaier's attorney made the following statement to the trial court regarding the timeliness of the plan:

"I think it's somewhat untimely being filed approximately four minutes prior to the commencement of our trial today and it certainly does not give me sufficient

time to respond in writing or to propose an alternative plan should we decide to do so. My suggestion would be that we proceed with the litigation and the taking of evidence over custody and in the event that this Court would then reach the conclusion that it would feel that shared parenting would be in the best interest of the child, I would then likely request an opportunity to submit a plan for shared parenting. That would seem to me to be the most practical way to proceed in light of this most recent filing."

Phyillaier did not allege, through her attorney, that she had been unaware of the shared parenting request, that the trial court should not consider the shared parenting request, or that she was unprepared to proceed with the hearing on custody issues because of the late filing.

When testimony was concluded on August 4, the hearing was continued until October 6, 1993. Phyillaier did not prepare a shared parenting plan in the interim. Following the hearing, the referee recommended shared parenting, but he rejected Harris's plan and ordered both parties to submit specific shared parenting plans.

Although Phyillaier argues in her brief that she was prejudiced by the fact that the hearing proceeded on the very day that Harris's shared parenting plan was filed, she has not demonstrated that she was prejudiced in any way. The request for shared parenting was filed more than thirty days before the hearing and indicated that the specific terms would be discussed at the hearing. Furthermore, since both parties had requested sole custody of their children, Phyillaier was undoubtedly prepared to address the relative strengths and weaknesses of the parties' parenting skills. After reviewing the shared parenting plan submitted by Harris, Phyillaier's own attorney recommended that the referee proceed with the hearing on August 4. Phyillaier's contention that the hearing should have been postponed under these circumstances because she was not prepared to address the shared parenting issue is unpersuasive.

Phyillaier had more than two months between the first and second days of the hearing to further prepare her case against shared parenting. In her brief, she claims that she assumed, based upon the thirty-day advance filing requirement in R.C. 3109.04(G), that the referee would not consider Harris's shared parenting plan. She also claims that she "would have prepared a shared parenting plan, brought in expert witnesses to back it up, selected her lay witnesses differently, and changed her entire theory of the case" if she had known that shared parenting was at issue. As a result, she did not take any additional steps to address the shared parenting issue between the hearing dates.

In our view, after the first day of the hearing, if not before, Phyillaier should have known that shared parenting was at issue in the case. She had not

requested that the referee disregard Harris's motion for shared parenting, nor had the referee indicated in any way that he was inclined to do so. While there may have been tactical or other reasons for the way in which Phyillaier and her attorney prepared her case and for not taking the initiative to prepare their own shared parenting plan, those decisions cannot be fairly attributed to a lack of notice that shared parenting was at issue. Furthermore, Phyillaier's contention that the referee should have ordered her to prepare a shared parenting plan if he "truly wished to use that 61 day period [between the hearing dates] to allow [Mrs. Phyillaier] to prepare to litigate the issue of shared parenting" is without merit; R.C. 3109.04(G) does not impose such a requirement.

Moreover, the trial court did not adopt the plan which Harris initially submitted and to which Phyillaier claims that she did not have a chance to respond. Once the trial court decided that shared parenting was in the best interests of the children, Phyillaier was given ample opportunity to present her own plan, and she did so.

Phyillaier's due process rights were not violated by the trial court's consideration of Harris's motion for shared parenting or by the manner in which the trial court conducted the custody hearing.

The first assignment of error is overruled.

"IV. The trial court erred in ordering shared parenting and not awarding sole custody to defendant as such was not in the best interests of the children."

Phyillaier asserts that the best interests of the children required that they be placed in her sole custody and that the trial court abused its discretion in ordering shared parenting. Specifically, Phyillaier claims that Harris's history of drinking, his excessive work schedule, and the children's resistance to visits with him indicate that the trial court's decision to award shared parenting was unreasonable, arbitrary, and unconscionable.

In the proceedings before the trial court, Harris's testimony indicated that he was a loving, concerned parent who was capable of taking care of his children and eagerly wanted to be a part of their lives. The parties did not dispute Harris's ability to care for and provide for the children. Harris acknowledged that his work schedule was very demanding, but said that he was willing to commit his days and evenings off to spending time with his children. He stated that he would seek different employment, if necessary, to facilitate a better relationship with his children. No evidence was presented that Harris had ever abused or neglected the children in any way. Harris acknowledged his alcohol problems, but the parties agreed that those problems were in the past. Harris testified that he remained active in his alcoholism rehabilitation program, and that his sobriety was the most positive step in his life in recent years. He admitted that his alcoholism had interfered with his relationship with his eldest daughter

because it had prohibited him from forming a strong bond with her in the early years of her life. However, he testified that their relationship had improved since he had stopped drinking.

Dr. Brown, the only expert to testify at the hearing, opined that shared parenting was in the best interests of the Harris children and that some of the strain of a shared parenting plan could be relieved by short-term counseling for the children and the parents at the outset of the arrangement. Although Brown expressed concern about the parents' unwillingness to cooperate with one another, his concern did not rise to a level at which he thought shared parenting was untenable. Brown also testified that the children's reluctance to visit with their father was attributable, in part, to "parent-bashing" and manipulative behavior, especially on the part of Phyillaier.

■ Based upon the evidence presented, the trial court could have reasonably concluded that Harris's alcoholism was not an appropriate reason to deny him shared custody of his children. Likewise, Harris's demanding work schedule did not require that he be denied shared custody of his children. Harris's testimony indicated that his children were more important to him than his work, and that he would seek other employment, if necessary, to preserve his relationship with his daughters. Furthermore, as the proposed shared parenting plans of both parties demonstrated, the parenting arrangement could be tailored to accommodate Harris's work schedule. Under these circumstances, the trial court did not abuse its discretion in awarding shared parenting.

The fourth assignment of error is overruled.

"II. The trial court erred in accepting plaintiff's plan for shared parenting as it did not conform to the statutory mandates."

Under this assignment of error, Phyillaier argues that the trial court should have rejected Harris's shared parenting plan because it did not satisfy statutory requirements. She also contends that her plan, which did comply with the statutory requirements, was improperly rejected.

R.C. 3109.04(G) states, in part:

"A plan for shared parenting shall include provisions covering all factors that are relevant to the care of children, including, but not limited to, provisions covering factors such as physical living arrangements, child support obligations, provision for the children's medical and dental care, school placement, and the parent with which the children will be physically located during legal holidays, school holidays, and other days of special importance."

■ For purposes of enforcement, it is important that all terms related to child care, custody, and support be incorporated into one instrument or decree. The legislature recognized this fact in R.C. 3109.04(D)(1)(d), wherein it provided:

"[T]he approved [shared parenting] plan shall be incorporated into a final shared parenting decree granting the parents the shared parenting of the children. Any final shared parenting decree shall be issued at the same time as and shall be appended to the final decree of dissolution, divorce, annulment, or legal separation arising out of the action out of which the question of the allocation of parental rights and responsibilities for the care of the children arose."

The trial court did not follow this procedure in this case. It issued a final decree of divorce, which resolved some of the issues related to child custody and support, before it adopted a shared parenting plan. This procedure made uncertain which provisions the parties needed to include in the shared parenting proposals requested by the court. For example, Harris's child support obligation was set forth in the decree of divorce, and he did not address this issue in his shared parenting plan. Phyillaier claims that his plan was defective because it failed to address that issue, among others. In our view, under the peculiar procedural posture of this case, it was reasonable that Harris's plan omitted some of the required elements of a shared parenting plan in that those issues had already been addressed by the trial court. Therefore, his plan should not have been rejected for that reason, as Phyillaier suggests.

■ However, by the same token, Phyillaier should not have been faulted for including elements required by R.C. 3109.04(G), despite the fact that some of those elements had already been addressed or were otherwise provided for by statute. The reason given by the trial court for its rejection of Phyillaier's shared parenting plan was that "it incorporates the recommendation of the Referee as to child support, it adds provisions for division of the cost of clothing, extra curricular [sic] activities, [and] income tax dependency exemptions. There are many, many other matter[s] which are already provided elsewhere, either by statute or rule, and some that are not the custom in our jurisdiction."

All of the issues Phyillaier addressed were "relevant to the care of the children" and were not outside the scope of a shared parenting plan contemplated by R.C. 3109.04(G). Based upon the referee's report and the journal entry by which the trial court adopted that report, the only reason given for the rejection of Phyillaier's plan was that it included unnecessary or uncustomary provisions. This was not a proper basis for the trial court to reject the plan. Furthermore, R.C. 3109.04(D)(1)(a)(iii) requires that the court enter in the record its findings of fact and conclusions of law as to the reasons for the approval, rejection, or denial of a shared parenting plan. The referee's report and recommendation related to shared parenting did not include an adequate recitation of the specific factual findings and conclusions of law which formed the basis of the determination that

Harris's plan should be adopted and Phyillaier's plan rejected. In fact, it is not apparent that the trial court considered the merits of Phyillaier's plan in any respect other than the fact that it included items "provided elsewhere" or "not customary in the jurisdiction."

For these reasons, we will remand this matter to the trial court for consideration of the merits of each of the shared parenting plans and the issuance of a final shared parenting decree which addresses all issues relevant to the care of the children and states with specificity the findings of fact and conclusions of law which underlie the decision.

The second assignment of error is sustained.

"III. The trial court erred in accepting plaintiff's plan for shared parenting as defendant's plan was clearly superior and in the best interest of the children."

Our disposition of the second assignment of error renders this assignment of error moot, and pursuant to App.R. 12(A)(1)(c), we will not address it.

The judgment of the trial court is affirmed insofar as it found that shared parenting was in the best interests of the Harris children. This matter will be remanded for further consideration of the proposed shared parenting plans and the issuance of a comprehensive shared parenting decree pursuant to R.C. 3109.04(D)(1)(a)(iii) and (D)(1)(d).

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

GRADY and FREDERICK N. YOUNG, JJ., concur.