OPINION
Plaintiff-appellant, Terri Rothwell, appeals the decision of the Warren County Court of Common Pleas, Domestic Relations Division, terminating her marriage to defendant-appellee, Mark Rothwell, ordering shared parenting of the parties' minor children and allocating the parties' assets and liabilities. We affirm the decision of the trial court.
The parties were married on September 22, 1990. Two children were born as issue of the marriage: Garrett Anthony, born January 21, 1996, and Kameron Richard, born August 24, 1999.
Terri has been employed by the Centerville City School System since 1986 and has a retirement fund with the State Employees Retirement System. Mark worked for New Dimensions of Medicine ("NDMN") for sixteen years until his termination in the fall of 1994.
In 1995, Mark used funds in his 401(k) account and a severance package he received from NDMN to purchase Little York Pizza Tavern located at 202 South Main Street in Franklin, Ohio. The tavern business was set up as a subchapter S corporation, Rothwell, Inc., with Mark as the sole shareholder of one hundred shares of stock. The tavern business made a small profit only in one year. Mark allocated approximately $10,000 per year for his personal use from the operation of the vending machines, video games, pool tables, and jukebox. Mark also owned two rental properties titled in his name that he purchased prior to the marriage.
On October 28, 1999, Terri filed a complaint for divorce, child support, and designation as the residential parent and custodian of the parties' two minor children. Mark filed an answer and counterclaim. Mark moved the court for shared parenting and adoption of his proposed shared parenting plan ("SPP") designating Terri as residential parent for school purposes and granting him standard visitation.
The matter was set for a hearing on March 15, 2000. Terri's counsel moved for a continuance and the matter was rescheduled for March 21, 2000. At some point, Terri became dissatisfied with her counsel and retained substitute counsel the week prior to the hearing. Terri's substitute counsel filed a motion for substitution and for a continuance the day before the scheduled hearing, asserting that he was unavailable on March 21, 2000, and that Terri's counsel had not adequately prepared. The trial court denied the motion and the hearing proceeded with Terri represented by her original counsel.
By its May 16, 2000 divorce decree, the trial court granted the parties' divorce and ordered the parties to participate in shared parenting. The trial court imputed $15,000 income to Mark and ordered him to pay $640.56 per month in child support.
In the division of property, the trial court allocated the two rental properties and the tavern business to Mark. Mark was awarded a 1990 GMC van, a 1985 travel trailer, and interest in unimproved real estate in Vinton County, subject to Mark paying Terri $5,362.50 for her one-half interest therein. The trial court ordered the marital home sold and the proceeds to be divided equally between the parties subject to the costs of the sale, the parties' credit card debt, and $11,000 to Terri for her separate property used for the down payment. Terri was awarded a 1986 Ford Taurus, a 1986 Toyota, and all the household goods except for those that were Mark's separate property.
Terri appeals, raising four assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN NOT ALLOWING APPELLANT A CONTINUANCE AND, IN EFFECT, IN NOT ALLOWING APPELLANT TO CHANGE ATTORNEYS BECAUSE THE ATTORNEY WHO REPRESENTED HER AT TRIAL FAILED TO HAVE EITHER THE BUSINESS OR THE RENTAL PROPERTIES APPRAISED.
Terri contends that the she was denied a fair trial when the trial court did not grant her motion for substitution of counsel and a continuance when her counsel failed to have the tavern business and rental properties appraised.
A decision to grant or deny a continuance lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. Hartt v. Munobe (1993), 67 Ohio St.3d 3, 9; Statev. Unger (1981), 67 Ohio St.2d 65, 67. See, also, Sayre v. Hoelzle-Sayre
(1994), 100 Ohio App.3d 203, 208. "Abuse of discretion" implies an attitude which is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 21.
Review of a decision on a motion for continuance requires application of a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, against the potential prejudice to the moving party. Unger at 67. The court should consider "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Id. at 67-68.
Generally, a substitute counsel's request for a continuance where the party failed to retain counsel just prior to the date of trial is not an adequate ground for a continuance. See Woods v. Woods, 1994 Ohio App. WL 100703, at *2 (Mar. 9, 1994), Montgomery App. No. C.A. 13487, unreported. "[A] judge's denial of a continuance because of counsel's unpreparedness is not an abuse of discretion if the unpreparedness was avoidable." Hartt, 67 Ohio St.3d at 9.
In the present case, the record reveals that before proceeding with the hearing, the trial court heard Terri's reasons for her motion. According to Terri, she had been previously unaware that she could change her attorney. She felt that there were issues to her benefit that had not been taken care of properly. Terri also informed the trial court that her original counsel, who was present and ready to proceed, was somewhat prepared. Mark and his counsel were also present and ready to proceed.
The trial court denied the motion, noting that the case was five months old, it had previously granted one continuance, the court's docket included more than eight hundred divorces a year, counsel had adequate time to prepare, and substitute counsel could not proceed on that day. The trial court advised Terri she could proceed pro se or with her original counsel, who was present and ready to proceed. Terri proceeded with her original counsel.
At the end of all testimony and before rendering its decision, the trial court again asked Terri about her concern that her counsel was unprepared. Terri indicated that the tavern business should have been appraised and felt her concerns with respect to the rental properties had been addressed. The trial court noted that appraisals would have been a waste of money since there was no equity in the tavern business, and Terri had testified that the rental properties were owned by Mark prior to their marriage.
Counsel's decision not to have appraisals done on the tavern business or the rental properties was a tactical decision. The trial court properly viewed Terri's requests for a continuance based upon her counsel's alleged unprepardness as an inadequate reason to grant a continuance and properly balanced any potential prejudice to Terri against its interest in controlling its own docket and the efficient dispensation of justice.
We conclude that the trial court did not abuse its discretion. Accordingly, the first assignment of error is overruled.
Assignment of Error No. 2:
THE TRIAL COURT ERRED IN GRANTING A SHARED PARENTING PLAN.
Terri contends that the trial court should have awarded her full custody of the parties' two minor children. Terri claims that Mark's failure to exercise standard visitation during the pendency of the case, his previous lack of interest in matters pertaining to the children such as daycare, and his daily drinking and taking Garertt to areas where there is smoking,[1] demonstrates that shared parenting was not in the best interest of the children.
A trial court is vested with broad discretion in deciding custody and its decision is subject to reversal only upon showing an abuse of discretion. Davis v. Flickinger (1997), 77 Ohio St.3d 415, paragraph one of the syllabus. When reviewing a trial court's allocation of parental rights and responsibilities, an appellate court must be mindful that the trial court is better equipped to examine and weigh the evidence and make decisions concerning custody. Miller v. Miller (1988), 37 Ohio St.3d 71,74. No abuse of discretion will be found provided there is a substantial amount of credible and competent evidence to support the trial court's decision. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 22-23.
When determining whether shared parenting is in the best interest of the children, the trial court must consider all relevant factors, including, but not limited to, the factors set forth in R.C.3109.04(F)(1)-(2) and 3113.215(B)(3). When awarding shared parenting, the trial court stated that it did so not because it thought Mark was a particularly good father, but because he was not asking for anything that was going to impede Terri's parenting of the children. The SPP designated Terri as the residential parent for school purposes and granted Mark standard visitation.
The record shows that Mark loves his children and desires to have shared parenting. Terri testified on direct examination and on cross-examination that she had no objection to Mark having standard visitation with the children. Her concerns focus more on Mark having involvement in decisions concerning the children such as daycare. The SPP allows day-to-day decisions to be made by the parent with whom the children are living with at the time. Only major decisions such as those regarding education, religion, and non-emergency medical care are to be made jointly. Because Terri was designated residential parent and has the children the majority of the time, she is responsible for the majority of the decisions concerning the parenting of the children.
Terri further testified that Mark has taken their son Garrett, who has Reactive Airway Disease, to dinner at various places including the tavern business where there is smoking. Terri testified that Garrett should not be around areas where people are smoking. However, Terri admitted that she has dropped off the children at the tavern business.
Terri also testified that Mark drinks daily and referred to an incident where Mark took Garrett to dinner with his girlfriend and had three beers. She also testified that his girlfriend drove them home. There was no evidence that Mark abused or neglected the children while in his care.
Based on the evidence presented, the trial court could have reasonably concluded that Terri's reasons were insufficient to deny shared parenting. See Harris v. Harris (1995), 105 Ohio App.3d 671, 676-677. Under the circumstances, Terri has not shown that the trial court abused its discretion by ordering shared parenting. The second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN AWARDING THE ENTIRE OWNERSHIP OF THE BUSINESS, ROTHWELL, INC., DBA LITTLE YORK PIZZA TAVERN, TO APPELLEE. (THIS WAS DONE BY AWARDING HIM THE ENTIRE 100 SHARES OF STOCK IN ROTHWELL, INC.)
Terri presents two issues for our review under her third assignment of error. In her first issue, Terri contends that the trial court erred by determining that the tavern business has no value when $40,000 was invested in the business and it has an Ohio liquor license.
The trial court has broad discretion when determining the value of a marital asset and it is not required to use a particular method of valuation. James v. James (1995), 101 Ohio App.3d 688, 689. For purposes of establishing the value of the tavern business, Mark offered copies of the business' lease agreement, license agreement, an unpaid note, and several tax returns signed by the parties.
Both parties testified that Mark made a $40,000 down payment on the tavern business. Mark later executed a $74,000 note in January 1997 for the remaining balance due on the purchase of the tavern business. Mark leased the building in which he operates the tavern business. The tax returns show a small profit of $2,085 only in 1996 and losses in all other years.
Terri argues that the actual income of the business may not have been reported since Mark took $10,000 from the business each year for his personal use. However, the record shows that both parties signed the tax returns indicating the business was losing money.
Furthermore, the note calls for a $1,000 down payment and a security interest in all the assets of the business. The note requires no payment of interest or principal for one year from the date of closing. A five percent per annum interest charge commences in January 1998, and no payments are required to be made prior to a balloon payment at the end of the tenth year. This provision is based upon gross sales remaining under $500,000 per year. If gross sales exceed $500,000 per year, the interest rate changes and payments become due.
The gross sales per year have been all under $500,000 per year and Mark has made no payments on the note. The trial court determined that Mark could not get enough financing from the tavern business to pay off the outstanding debt by the time the balloon payment was due. If that payment is not made, the seller has the right to reclaim all the assets in the business.
In light of the foregoing, we find that the trial court did not abuse its discretion by finding that there was no equity in the tavern business. Accordingly, Terri's first issue for review is not well-taken.
In her second issue, Terri contends that she is entitled to a fifty percent interest in the tavern business because part of the down payment on the tavern business was marital property. Terri further argues that even if the tavern business in fact has no value, she is still entitled to half of the business, including her part of the debt.
A trial court is vested with broad discretion in dividing marital assets. Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 401. The trial court's division of marital property must be equal, unless such a division would be inequitable, in which case the court must divide the property equitably. R.C. 3105.171(C); Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. The mere fact that a property division is unequal does not, standing alone, amount to an abuse of discretion. Brown v.Brown (July 21, 1997), Butler App. No. CA97-01-010, unreported, at 6.
"Marital property" includes all personal property currently owned by either or both of the spouses that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). It is important to note that the holding of title to property by one spouse individually or jointly does not in and of itself determine whether the property is marital or separate. R.C. 3105.171(H).
The record shows that approximately $5,000 for the down payment of the tavern business came from Mark's severance package from NDMN, which was earned during the marriage. There was no evidence presented to establish the exact amount of the 401(k) ($35,000 total) that was earned during the marriage.
Terri testified that when the tavern business opened in 1995, she would work there after finishing her other job. She washed dishes, served customers, answered phones, and took care of the "daily sheets" until January 1996 when their first child was born. Thereafter, she helped out on Sundays to do the liquor inventory and covered for Mark when he went on hunting or fishing trips.
Such evidence was sufficient to show that at least part of the tavern business was marital property. However, because the trial court awarded the entire debt of the tavern business to Mark, we cannot find that the trial court's decision to award full ownership in the tavern business to Mark was an abuse of discretion. See Kautz v. Kautz (Feb. 9, 1987), Preble App. No. CA86-06-012, unreported.
Having reviewed the entire record, we find no abuse of discretion in the trial court's valuation of the tavern business or its award of full ownership to Mark. While the trial court did not divide the tavern business equally, it was equitable under the facts and circumstances of this case. Terri's third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED IN AWARDING APPELLEE ALL INTEREST IN THE RESIDENTIAL RENTAL PROPERTIES LOCATED AT 2765 LOWELL COURT, KETTERING, OHIO, AND 3817 LEFEVRE DRIVE, KETTERING, OHIO.
Terri contends that she is entitled to fifty percent of the appreciation value of the two rental properties. Terri argues that any increase in the appreciation of the two properties was due to her labor in the management of the properties since 1995.
When either spouse makes a contribution, whether it is monetary, labor, or in-kind, that causes an increase in the value of separate property, the increase in the value is deemed marital property. R.C.3105.171(A)(3)(a)(iii); Middendorf, 82 Ohio St.3d at 400. Appreciation as a result of an increase in the fair market value of separate property due to its location or inflation is considered passive income and separate property. Monroe v. Monroe (1997), 119 Ohio App.3d 530, 536.
In the present case, both parties testified that Mark owned two rental properties prior to their marriage located at 2765 Lowell Court and 3816 LeFevre Drive in Kettering, Ohio. Mark testified that he purchased the Lowell Court property for $35,000 and it now has a value of $50,000. In addition, the house on the Lowell Court property had sustained damage in the amount of $10,000. The property on LeFevre Drive was purchased for $44,500 and it now has a value of $40,000. The trial court found that the increase in value of the Lowell Court house was due to an increase in its fair market value.
Terri questions the validity of the decline in the LeFevre Drive property since it was based upon Mark's testimony and not an appraisal. The trial court, as the trier of fact, was free to believe Mark's testimony and give credence to the evidence. See Meister v. Meister, 2000 Ohio App. WL 1513750, at *4 (Oct. 12, 2000), Cuyahoga App. No. 77110, unreported.
Mark and Terri both testified that Terri managed the rental of the two properties after Mark started the tavern business in 1995. During that time, there were only three tenants placed between the two properties. Mark also testified that he handled repairs and management of the properties before 1995. There was no evidence in the record showing that the increase in value of the Lowell Court home was due to active appreciation by Terri's or Mark's labor in renting the units. Nor was there any evidence that either Terri or Mark made improvements, or used marital funds to maintain or pay the mortgages on the properties.
Under these facts and circumstances, we find that the trial court did not abuse its discretion by finding that any appreciation on these properties was due to an increase in fair market value, and therefore the increase was passive appreciation of Mark's separate property. Accordingly, the fourth assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] The record indicates that Garrett has "reactive airway disease" and should not be in areas where he is exposed to smoke.