{¶ 1} Plaintiff-Appellant, Angie B. Clouse, appeals the judgment of the Seneca County Court of Common Pleas entering a decree of divorce and adopting a shared parenting plan. On appeal, Angie argues that the trial court erred in overruling her objection to the magistrate's decision to allow her ex-husband, Defendant-Appellee, Richard L. Clouse, to present a shared parenting plan after the final divorce hearing, in violation of R.C. 3109.04(G), and that the trial court erred in adopting the magistrate's decision to implement Richard's shared parenting plan because the finding that the plan was in the best interest of the children was unsupported by the record, and because the magistrate failed to articulate findings of fact and conclusions of law to establish that the plan was in the best interest of the children, as required by R.C. 3109.04(D)(1)(a)(iii). Based on the following, we affirm the judgment of the trial court.
 {¶ 2} The parties were married in November 1989 and had two children born as issue of their marriage, Stacy L. Clouse (D.O.B. 3/9/1997), and Hunter R. Clouse (D.O.B. 11/22/1999) (hereinafter jointly referred to as "the children").
 {¶ 3} In January 2007, Angie filed a complaint for divorce, requesting that she be appointed the temporary and permanent residential parent of the children. Additionally, Angie filed a motion for temporary orders, requesting, among other *Page 3 
things, that she be designated as the residential parent and legal custodian of the children.
 {¶ 4} Subsequently, Richard filed an answer and counterclaim, requesting that he be granted residential parent status and legal custody of the children, or, in the alternative, that the court adopt a shared parenting plan.
 {¶ 5} In March 2007, the magistrate held a hearing on temporary orders, and, pursuant to a mutual agreement of the parties, ordered that Angie and Richard share parental rights and responsibilities, with each party having companionship time with the children for a three-day rotating basis.
 {¶ 6} In May 2007, Angie filed a motion for an award of child support and to be designated the legal custodian and residential parent of the children. She claimed that, despite the parties' agreement to spend an equal amount of time with the children, most months Richard only spent a few days with them, and, consequently, the temporary orders of the court should be adjusted to reflect the reality of the situation: that she is the de facto residential parent.
 {¶ 7} In June 2007, Angie filed a motion for contempt, alleging that Richard failed to abide by the magistrate's orders contained in her March 2007 judgment, ordering that "[w]hen either party is exercising companionship time with the children, that party shall not consume or abuse alcohol," (Mar. 2008 journal entry, p. 2), because Richard was drunk while attending Stacy's ballgame *Page 4 
at Melmore Elementary School, and because the police had to be called to Hunter's ballgame in Melmore, Ohio, the following day because Richard was also under the influence of alcohol.
 {¶ 8} Subsequently, the magistrate held a second temporary orders hearing, and, pursuant to a mutual agreement of the parties, ordered that Richard shall have the children every Tuesday and Wednesday and every other weekend; that the remainder of the children's time shall be spent with Angie; that the parties shall follow local rules for holiday parenting time; that Angie shall be the residential parent for holiday parenting time and school purposes; and, that Richard shall enroll in Fireland's Counseling and Recovery Services so that an assessment can be made on his alcohol consumption issues.
 {¶ 9} In September 2007, the magistrate held a final contested divorce hearing. At the hearing, Angie testified that she moved out of the marital residence in October 2006; that, in November and December 2006, she kept the children for 25 days each month, and, in January and February 2007, she kept them for 24 days each month; that she would often call Richard to see if he could take the children, but that he would be out hunting or doing other things; that, from March until June, she and Richard mostly abided by the temporary shared parenting order of the magistrate, but that Richard would still sometimes call and ask her to take care of the children on his scheduled days, such as when he called *Page 5 
her at the last minute and asked her to pick the children up at school because he was out hunting and became ill, when he asked her to take care of the children on his scheduled weekend so he could go to a wedding with his girlfriend, and when he asked her to take the children on his scheduled Saturday night so he could go to a party with his girlfriend; that she never refused Richard's requests to take care of the children on his scheduled days; and, that she almost never asked him to take care of the children on her scheduled days.
 {¶ 10} Angie further testified that Richard had a problem controlling his alcohol consumption while they were married; that, in the year before she left, Richard would drink as much as a twelve pack of beer at one time and would buy up to 900 cans of beer at one time to have around the house; that, in April 2006, he came home from drinking one night and smashed the back of a chair, pulled a chunk of hair out of her head, and threw trash and clothes all over the house; that, even though the children were in the house at the time, they did not find out about the incident; that, on a couple other occasions, he came home and threw trash, beer cans, and clothes around the house in a drunken rage; and, that recently, Richard underwent two evaluations at Fireland's Counseling and Recovery Services pursuant to the order of the magistrate, in which it was determined that he does not suffer from an alcohol problem. *Page 6 
 {¶ 11} Angie continued that Richard suffers from medical problems that affect his ability to take care of himself, including low blood sugar and polycystic kidney disease; that if he does not eat properly and drinks alcohol, he becomes very weak and disoriented; and, that he also suffers from a foot condition which has left him unable to continue his job duties as a police officer, resulting in him being off work and collecting disability pay.
 {¶ 12} Angie also stated that after the children returned from staying with Richard, Stacy would be in a "zombie state" (Sep. 2007 final contested divorce hearing tr., p. 94) and would barely speak, and Hunter would be very mean and aggressive; that she is more involved with the children than Richard, including coaching Stacy's softball team and volunteering at the children's school during special events; that a shared parenting plan is not in the best interest of the children because Richard places other things above the children; and, that she wants the court to order full custody of the children to her, with Richard only having the children on every other weekend, despite the fact that the children have expressed a desire to keep the current shared parenting schedule in place.
 {¶ 13} Deputy Larry Mackling testified that he was called to a baseball field in Melmore in June 2007 based upon a report that Richard was at the field intoxicated, causing a disturbance; that, when he arrived at the scene, Richard was sitting in his truck speaking with his brother and watching Stacy's softball game; *Page 7 
that when he approached the truck and asked Richard what was going on, he could smell alcohol on his breath, but that Richard did not show signs of being highly intoxicated, such as slurring his words or staggering around; and, that Richard told him that he was not intoxicated or causing any problems, and that he had a couple of beers before he came to the game. Deputy Mackling continued that he then spoke with Angie, who was also at the game, and she informed him that her concern was that Richard was supposed to watch the children after the game, and she did not want them riding with him after he had been drinking; that, in order to resolve the situation, Richard voluntarily agreed to have his brother drive him home, and Angie would then drop the children off at Richard's house; that he did not know if Richard's blood alcohol level was above the legal limit; and, that he did not have any concerns with Richard being able to take care of the children when he arrived home.
 {¶ 14} Carry Theis, a mutual friend of Richard and Angie, testified that she was familiar with Richard's drinking habits; that, when he would come to the children's ballgames, she could smell alcohol on him, and he would act in a drunken manner; that such incidents occurred three or four times, mainly over the past year; and, that Richard's behavior at these ballgames was not out of control, but it was obvious he had been drinking. *Page 8 
 {¶ 15} Richard testified that he and Angie did not get along for an extended period of time before they separated and divorced; that they would often get into fights, during which he would throw things around the house; that she also threw a figurine at him during one fight and put a hole in the wall; that, during the incident in which he broke a chair and pulled her hair out, he had been drinking, but that his blood sugar also became very low, contributing to his violent behavior; that he does not normally act in such a violent manner when he drinks; that he did drink excessively in the past due to stress and tension in the marriage; but, that, since he and Angie have separated and divorced, he drinks much less because he is less stressed.
 {¶ 16} Richard continued that alcohol does not hinder his ability to be an effective parent; that he takes care of the children when they are with him, including giving them baths, cooking, and helping them with their homework; that he also takes the children on activities, such as hunting, fishing, and camping, and going to the zoo, the park, and the state fair; and, that he also attends almost all of the children's sporting activities.
 {¶ 17} Richard further testified that he and Angie are able to work well together in the shared parenting plan to resolve any conflicts that arise with taking care of the children; that he, Angie, and the children were all content with the shared parenting plan, with Angie even voluntarily agreeing to the plan in March *Page 9 
2007, but that Angie began to change her attitude about the parenting plan when she found out that he was dating someone else; that when she first found out about his girlfriend, she became very upset and "went nuts * * *, punching the walls and hitting stuff" (Id., p. 191); that, when she found out that he was going to introduce the children to his girlfriend, she called him nineteen times and came to his house; and, that ever since these incidents, Angie seems to be against a shared parenting plan.
 {¶ 18} Richard also testified that the children have continually told him they are happy with the current parenting situation; that he would be devastated if he could only see his children every other weekend; that, although he was not there for his children as much as he should have been during some months, he has been abiding by the magistrate's temporary shared parenting plan; and, that he has been trying to eat better and take better care of himself.
 {¶ 19} Subsequently, the magistrate issued an order, stating, in part:
 Neither party provided the court with a Shared parenting plan that would definitely determine the "plan" in the shared parenting plan.
 In accordance with R.C. 3109.04(D)(1)(a), either party who chooses shall file on or before September 24, 2007 a Shared Parenting Plan that will outline the provisions of shared parenting that is [sic] requested by that party to be adopted by this Court. Neither party is required to file a shared parenting plan with the court, but in order for this court to consider whether shared parenting is in the best interest of the children a plan must be filed. *Page 10 
(Sep. 2007 Magistrate's Order/Judgment Entry).
 {¶ 20} Shortly thereafter, Angie filed an objection to the magistrate's order requesting the parties to submit a shared parenting plan to the court for consideration. In her motion, Angie alleged that R.C. 3109.04(G) requires all shared parenting plans to be filed with the petition for dissolution of marriage or within thirty days prior to the hearing on the issue of parental rights and responsibilities for the care of the children. Angie contended that, because a shared parenting plan had yet to be filed and the final divorce hearing had already been conducted, the magistrate was without authority to allow Richard to file a shared parenting plan.
 {¶ 21} On September 21, 2007, Richard filed a shared parenting plan with the magistrate, requesting a shared parenting schedule similar to the terms of the magistrate's temporary shared parenting order: that he be granted time with the children on Tuesdays, Wednesdays, and every other weekend from Friday until Sunday; that Angie be granted time with the children on Mondays, Thursdays, and every other weekend; and, that holidays be shared based upon the mutual agreement of the parties.
 {¶ 22} On September 26, 2007, Richard also filed a response to Angie's objection to the magistrate's judgment entry permitting the parties to file a shared parenting plan. In his response, Richard contended that R.C. 3109.04(G) is not an *Page 11 
inflexible rule, but grants the trial judge discretion to allow parties to file a plan past the prescribed time deadline as long as the opposing party's due process rights are protected by allowing them sufficient opportunity to address the issues and present evidence.
 {¶ 23} In November 2007, the magistrate issued an order again granting the parties leave to file a shared parenting plan or an amended shared parenting plan on or before November 29, 2007.
 {¶ 24} Subsequently, Angie filed an objection to the magistrate's second order granting the parties leave to file a shared parenting plan, again contending that the magistrate was without authority to permit such a filing pursuant to R.C. 3109.04(G), and requesting that she be named the residential parent and legal custodian of the children. Additionally, Angie submitted a shared parenting plan to be adopted by the magistrate should her objection be overruled. The plan submitted by Angie requested the same parenting schedule as set forth in Richard's plan, with her to have the children on Mondays, Thursdays, and every other weekend.
 {¶ 25} In January 2008, the magistrate issued a decision, recommending that the court grant Angie a divorce and adopt the divorce agreement of the parties. Additionally, the magistrate found that it would be in the best interest of *Page 12 
the children for the court to adopt the shared parenting plan submitted by Richard.
In her decision, the magistrate stated:
 At the final hearing, Plaintiff Mother testified that she opposed shared parenting and asked to be named the residential parent and legal custodian. Father testified that he wished to continue to abide by a shared parenting agreement.
 * * *
 This Magistrate conducted an in camera interview with the children. This Court finds that both children have sufficient reasoning ability to express their desires and concerns to the Court. * * * Based solely on the in-camera interview, the Magistrate finds no special circumstances to indicate that it would not be in the child's [sic] best interest to determine their wishes and concerns. * * * Both children advised the Magistrate that each wishes to continue to spend equal time with each parent.
 * * *
 This Court has reviewed the shared parenting plan filed by Defendant and FINDS that shared parenting is in the best interest of the parties' minor children. * * * This shared parenting plan ensures that both parents shall have frequent and continuing contact with both parents [sic]. This Magistrate FINDS this frequent and continuing contact with both parents is in the best interest of the parties' children. * * * This Court further FINDS that neither of the parents have been convicted of any charge as defined in R.C. 3109.04(F)(h); neither parent has continually or willfully denied the other parent parenting time; and neither parent has testified that they will be locating outside the state of Ohio. These two children are involved in extracurricular activities including music and sports. * * * Both parents will be needed to ensure that the children are able to attend their various activities.
 The Court heard the testimony as to the various medical and physical conditions of Defendant. * * * The Court heard testimony as to the amount of alcohol that Defendant has imbibed as a practice over the last several years. * * * There *Page 13 was testimony by both parties as to the behavior of Defendant at home during the marriage. * * *
 Defendant was evaluated by Fireland's Counseling and Recovery Services and was not found to need treatment for alcohol. * * * Based on the testimony received on this day, this Court has as many concerns about Defendant's blood sugar problems due to his not taking care of himself, not following doctor's recommendations and not eating as he should, as there may be concerning Defendant's alcohol use or misuse. * * * The Magistrate finds that it is in the best interest of the parties' children that the Defendant be ordered to comply with all recommendations, treatment strategies, etc. of his doctor and other health care providers. It is further the Recommendation of this Court that neither party should consume alcohol to the extent that they are under the influence of alcohol.
(Jan. 23, 2008 Magistrate's Decision, pp. 4-6).
 {¶ 26} In February 2008, Angie filed objections to the magistrate's January 2008 decision, again arguing that the magistrate was without authority pursuant to R.C. 3109.04(G) to permit the parties to file a shared parenting plan after the final divorce hearing, and that permitting such a filing deprived her of the opportunity to present evidence, to question witnesses, and to cross-examine witnesses with regard to the shared parenting plan that was offered.
 {¶ 27} In March 2008, Angie filed supplemental objections to the magistrate's January 2008 decision, asserting that the magistrate's decision to order a shared parenting plan was unsupported by the record, as testimony was presented on Richard's alcohol, medical, and anger issues, and, consequently, the adoption of a shared parenting plan is not in the best interest of the children. *Page 14 
 {¶ 28} In September 2008, the trial court adopted the magistrate's recommendation to grant a divorce and overruled Angie's objections to the magistrate's grant of leave to the parties to submit a shared parenting plan after the final divorce hearing and to the magistrate's decision to adopt a shared parenting plan.
 {¶ 29} In October 2008, the trial court filed a judgment entry, adopting the shared parenting plan recommended by the magistrate.
 {¶ 30} It is from this judgment that Angie appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED IN UPHOLDING THE MAGISTRATE'S DECISION AS TO ALLOWING THE APPELLEE TO PRESENT A SHARED PARENTING PLAN AFTER THE FINAL DIVORCE HEARING.
 Assignment of Error No. II THE TRIAL COURT ERRED IN UPHOLDING THE MAGISTRATE'S DECISION AS TO FINDING THE SHARED PARENTING PLAN WAS SUPPORTED BY THE RECORD.
The following standard of review applies throughout.
 Standard of Review {¶ 31} An appellate court reviews a trial court's decisions on child custody matters for an abuse of discretion. Miller v. Miller (1988),37 Ohio St.3d 71; Erwin v. Erwin, 3d Dist. No. 14-05-45, 2006-Ohio-2661, ¶ 12;Swain v. Swain, *Page 15 
4th Dist. No. 04CA726, 2005-Ohio-65, ¶ 2. Due to the difficult and complicated nature of custody determinations, appellate courts must grant wide latitude to a trial court's consideration of the evidence,Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418, and, thus, we will not reverse a child custody decision that is supported by a substantial amount of competent, credible evidence. Bechtol v. Bechtol (1990),49 Ohio St.3d 21, syllabus.
 {¶ 32} An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 Assignment of Error No. I {¶ 33} In her first assignment of error, Angie contends that the trial court erred in upholding the magistrate's decision to permit the parties to file a shared parenting plan after the final divorce hearing. Specifically, Angie argues that R.C. 3109.04(G) requires the parties to file a shared parenting plan with the divorce petition or at least thirty days prior to the final hearing on the issue of parental rights and responsibilities, and that the trial court should not have granted leave to file an untimely plan because it violated her due process rights to adequately respond to the submitted plan. We disagree. *Page 16 
 {¶ 34} R.C. 3109.04(G) governs the time limitations to file a shared parenting plan with the trial court. This subsection provides, in pertinent part:
 The plan for shared parenting shall be filed with the petition for dissolution of marriage, if the question of parental rights and responsibilities for the care of the children arises out of an action for dissolution of marriage, or, in other cases, at a time at least thirty days prior to the hearing on the issue of the parental rights and responsibilities for the care of the children.
 {¶ 35} In interpreting and applying the filing deadlines of R.C. 3109.04(G), courts have found the requirement not to be a rigid rule, but a flexible guideline to assure the opposing party is not prejudiced by failing to have an adequate opportunity to respond to the shared parenting plan. Hampton-Jones v. Jones, 8th Dist. Nos. 77279, 77412, 2001-Ohio-4229; Swain v. Swain, 4th Dist. No. 04CA726, 2005-Ohio-65, ¶ 13. See, also, Burger v. Burger, 11th Dist. No. 93-P-0100,1994 WL 721842; Onion v. Onion, 11th Dist. No. 95-A-0002, 1996 WL 648849, fn. 2;In re Minnick, 12th Dist. No. CA2003-01-001, 2003-Ohio-4245, ¶ 12.
 {¶ 36} In Harris v. Harris (1995), 105 Ohio App.3d 671, the court stated:
 In our view, [R.C. 3109.04(G)] was not intended by the legislature to divest the trial court of a reasonable degree of flexibility in considering shared parenting plans. Within its discretion, the trial court may relieve a party of the statutory deadline and grant a party's request to file a shared parenting plan within thirty days prior to the hearing. We also agree * * * that the statutory deadline implicates [the party's] right to due process. The critical inquiry is thus whether [the party] had an *Page 17 
 adequate opportunity to respond to the plan so that her due process right was protected.
Id. at 674.
 {¶ 37} Furthermore, in Hampton-Jones, 2001-Ohio-4229, the court stated:
 R.C. 3109.04(G) does not create an inflexible rule requiring all shared parenting plans to be submitted thirty days before trial-a judge has discretion to grant leave to file an untimely plan, as long as due process rights are protected by allowing the opposing party adequate opportunity to address the issue and present relevant evidence at trial.
Id., citing Harris, 105 Ohio App.3d at 674.
 {¶ 38} Additionally, this Court, while not directly mentioning the flexibility of R.C. 3109.04(G), has indirectly referenced the trial court's authority to grant a party leave to file a shared parenting plan after the statutory deadline.
 R.C. 3109.04(G) provides that in a contested divorce proceeding, any plan for shared parenting shall be filed at least thirty days prior to the hearing on the issue of parental rights and responsibilities for the care of the children. Appellant filed his proposed shared parenting plan two days before the final hearing day. It was, therefore, not in compliance with R.C. 3109.04. The court pointed out that it could still consider the same if it permitted Appellee to file her version and held further hearing if such would be in the best interest of the child. However, the court found that shared parenting periods of two weeks as proposed by Appellant's plan would not be in the child's best interest because of the considerable friction between the parties. Leave was thus not granted to Appellant to allow his late filing of his proposed shared parenting plan.
(Emphasis added). Wright v. Wright, 3d Dist. No. 4-95-20,1996 WL 253314. *Page 18 
 {¶ 39} In the case at bar, Richard's answer and counterclaim to Angie's complaint for divorce included a request that he be granted residential parent status and legal custody of the children, or, in the alternative, that the court adopt a shared parenting plan. Moreover, the trial court also held two temporary orders proceedings, in which it ordered, pursuant to the mutual agreement of Richard and Angie, that the parties share parental responsibilities on an equal basis. As such, while Richard may not have filed a shared parenting plan until after the final divorce hearing, Angie had sufficient notice of Richard's request for the trial court to adopt a shared parenting plan and an incentive to defend against the permanent adoption of such a plan at the final divorce hearing, even if she did not know the specifics of the plan. In addition, Angie had the opportunity to testify and present evidence on how a shared parenting plan was not in the best interest of the children and how the court should award her full custody, clearly evidence by the following colloquy:
 [Angie's Attorney]: On the contrary, do you feel that he has not worked very well with you on the shared parenting plan?
 [Angie]: No, I don't think he's worked at all. He has problems. He gives up their days. He has his own interests instead of the kid's first when it is his days. * * *
 [Angie's Attorney]: So in the end, do you believe it is not in the best interest of the kids for this Court to order a shared parenting plan?
 [Angie]: No, I don't want it. *Page 19 
 [Angie's Attorney]: But my question is, is it not in the kid's best interest?
 [Angie]: No, I don't think so.
(Sep. 2007 Final Contested Divorce Hearing Tr., pp. 132-133).
 {¶ 40} We further note that, when the magistrate granted Richard leave to file a shared parenting plan, she also gave Angie the opportunity to file her own shared parenting plan, and, while Angie did file objections to the magistrate's decision to grant leave, she did submit her own shared parenting plan with provisions similar to Richard's plan should the magistrate overrule her objection.
 {¶ 41} Accordingly, we find that the trial court did not abuse its discretion under R.C. 3109.04(G) in granting Richard leave to file a shared parenting plan after the final divorce hearing, as the due process concerns of Angie's opportunity to address the shared parenting plan were clearly met by the fact that she had adequate notice of his request for the court to adopt a shared parenting plan, the opportunity to present her own shared parenting plan, and a full and fair opportunity to present evidence against the adoption of a shared parenting plan at the final divorce hearing.
 {¶ 42} Accordingly, we overrule Angie's first assignment of error.
 Assignment of Error No. II *Page 20 {¶ 43} In her second assignment of error, Angie argues that the trial court erred in adopting the magistrate's recommendation of a shared parenting plan. Specifically, she contends that the magistrate's finding that a shared parenting plan was in the best interest of the children was unsupported by the record, and that the magistrate failed to make findings of fact and conclusions of law to support her recommendation to adopt a shared parenting plan and reject Angie's request for permanent custody of the children. We disagree.
 {¶ 44} R.C. 3109.04(D)(1)(a)(iii) establishes the trial court's duties in accepting or rejecting a shared parenting plan when only one parent requests shared parenting. The statute provides, in pertinent part:
 If the court approves a plan under this division, * * * or if the court rejects the portion of the pleadings or denies the motion or motions requesting shared parenting under this division and proceeds as if the request or requests or the motion or motions had not been made, the court shall enter in the record of the case findings of fact and conclusions of law as to the reasons for the approval or the rejection or denial. Division (D)(1)(b) of this section applies in relation to the approval or disapproval of a plan under this division.
Furthermore, R.C. 3109.04(D)(1)(b) provides that:
 The approval of a plan under division (D)(1)(a)(ii) or (iii) of this section is discretionary with the court. The court shall not * * * approve a plan under either division unless it determines that the plan is in the best interest of the children.
 {¶ 45} "[A] trial court may substantially comply with R.C. 3109.04(D)(1)(a)(iii), without providing a detailed analysis, if its reasons for *Page 21 
approval or denial of the shared parenting plan are apparent from the record." Erwin v. Erwin, 3d Dist. No. 14-04-37, 2005-Ohio-1603, ¶ 12, citing Hall v. Hall, 3d Dist. No. 14-97-03, 1997 WL 282452. However, merely making a conclusory statement that shared parenting is or is not in the best interest of the children does not satisfy R.C. 3109.04(D)(1)(a)(iii), as it requires findings of fact and conclusions of law supporting an acceptance or rejection of a shared parenting plan.Swain, 2005-Ohio-65, at ¶ 19. See also, Erwin, 2005-Ohio-1603, at ¶¶ 12-13.
 {¶ 46} R.C. 3109.04(F)(1) provides a non-exclusive list of factors to assist the trial court in determining the best interest of a child. Some of these factors are:
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 * * *
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 * * *
 (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty *Page 22 to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 {¶ 47} Moreover, R.C. 3109.04(F)(2) provides a non-exclusive list of factors to assist the trial court in determining whether a shared parenting plan is in the best interest of the child. In addition to the factors listed in (F)(1), the statute provides:
 (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
 (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 {¶ 48} In the case at bar, Angie presented testimony that Richard had a drinking problem in the past; that there were times when he came to the children's sporting activities after he had been drinking; that he had difficulty controlling his anger and even physically abused her on one occasion; that, prior to the trial *Page 23 
court's temporary shared parenting order, he often abandoned his scheduled parenting time in order to pursue his hobbies; that he suffered from several medical conditions which affected his ability to undertake simple tasks; and, that the children would sometimes act in an abnormal or aggressive way after returning from Richard's scheduled parenting time.
 {¶ 49} However, testimony was also presented that the children have expressed a desire to continue with the shared parenting time; that Richard has twice been evaluated for and cleared of having alcohol control problems; that Richard does not drink to the excess that he did while he and Angie were married; that Richard's alcohol consumption does not disturb his ability to be an effective parent; that Richard has better managed his health issues in recent months; that Richard is a very involved parent, cooking, helping the children with their homework, giving them baths, taking them on various activities, and watching their ball games; that Richard and Angie have worked well together to resolve conflicts in parenting the children; that, ever since the magistrate issued a temporary order for shared parenting, Richard has been mostly faithful in caring for the children on his scheduled days; and, that part of Angie's incentive to gain full custody of the children may relate to her resentment of Richard's girlfriend.
 {¶ 50} Furthermore, we note that the shared parenting schedule adopted by the trial court was very similar to the shared parenting schedule temporarily *Page 24 
ordered by the magistrate during the pendency of the divorce proceedings, and testimony was presented that Angie and Richard were cooperating in following the temporary shared parenting schedule and that the children liked the shared parenting schedule.
 {¶ 51} Although testimony was presented that could have established that shared parenting was not in the best interest of the children, there was also adequate evidence presented that would allow the trial court to find that shared parenting was in the children's best interest. Moreover, because the weight to be given to the evidence and the credibility of witnesses is primarily reserved to the trier of fact,State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus, we find that the trial court did not abuse its discretion in determining that shared parenting was in the best interest of the children.
 {¶ 52} Furthermore, we also find that the magistrate made the appropriate findings of fact and conclusions of law in recommending that the trial court adopt Richard's shared parenting plan. In the trial court's September 2008 judgment entry of divorce, it expressly adopted the magistrate's findings of fact and conclusions of law contained in the magistrate's January 2008 decision. In that decision, the magistrate found that because only Richard requested shared parenting, R.C. 3109.04(D)(1)(a)(iii) applied; that shared parenting ensures both parents will have frequent and continuing contact with the children, which is in the *Page 25 
children's best interest; that, because both parents live in close proximity to each other, exchanging the children will not be a problem; that neither parent has been convicted of any charge as defined in R.C. 3109.04(F)(1)(h)[1]; that neither parent has continuously or willfully denied the other parent parenting time; that neither parent has testified that they will be relocating outside of the state of Ohio; that both children are involved in extracurricular activities, and both parents are needed to ensure that the children will be able to continue to participate in these activities; and, that, although testimony was presented on Richard's past drinking habits, he has been evaluated and found to not be in need of alcohol counseling or treatment.
 {¶ 53} The magistrate further stated in her decision that she had considered all the evidence of the parties; that, in making findings of fact, she has set forth the factors relevant to the determination of the issues in addition to the specific factors required to be considered by statute; that, the lack of a specific finding does not mean that she did not consider that fact; and, that Richard's shared parenting plan should be adopted by the trial court because it is in the best interest of the children.
 {¶ 54} Consequently, we find that the trial court made findings of fact and conclusions of law to support its finding that shared parenting is in the best interest of the children, including setting forth specific facts evidencing the factors contained in R.C. 3109.04(F)(1) and (2). *Page 26 
 {¶ 55} Accordingly, we overrule Angie's second assignment of error.
 {¶ 56} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 PRESTON, P.J. and WILLAMOWSKI, J., concur.
[1] The magistrate actually wrote R.C. 3109.04(F)(h) in her findings; however, we assume this clerical error refers to R.C. 3109.04(F)(1)(h), as the only (h) in section (F) is contained under subsection (1). *Page 1