JOURNAL ENTRY AND OPINION
This is a consolidated appeal from orders of Domestic Relations Judge Anthony J. Russo. Appellant Michelle Hampton-Jones claims it was error to impose a shared parenting plan, to require her to pay child and spousal support, to award appellee Trevor Jones attorney fees, that the marital property was wrongfully divided and she should have been granted a new trial. We affirm in part, vacate in part and remand.
We glean from the nine volume, 3,181-page transcript and record the following: The couple met in 1990 while both were attending Northeastern University in Boston. Later that year Ms. Hampton-Jones obtained her M.B.A. and accepted a position with Deloitte Touche in Cleveland and Mr. Jones, after obtaining his M.B.A., joined her. He moved to Washington, but returned to take a summer contract position with the Urban League and the couple were married on August 17, 1991. Shortly thereafter he accepted the position of an admissions recruiter for Case Western Reserve University. The couple's child, Christopher, was born on February 15, 1994.
By January 1995, Ms. Hampton-Jones was considering both a divorce and starting her own business. In April 1995, she left her $80,000 Deloitte 
Touche position and formed a company called Creative Consulting Management Group (CCMG) in partnership with another former co-employee. Her firm promptly was awarded a contract with the Cleveland Metropolitan Housing Authority (CMHA), and her salary from the new venture was $90,000. That same month, Mr. Jones quit his $30,000 job at Case Western Reserve and remained unemployed or underemployed for over a year. Although he did some part-time consulting work, he did not obtain meaningful employment until September 1996, when he took a position with the United Way, at approximately $30,000 per year. On May 5, 1995, Ms. Hampton-Jones filed a Complaint for Divorce and Petition for Domestic Violence to which Mr. Jones filed an answer and counterclaim for divorce. Within a month the couple agreed on a shared parenting agreement and a civil protective order was dismissed. In an agreed journal entry, the judge awarded Mr. Jones $500 per month as temporary spousal support, but on October 9, 1996, Ms. Hampton-Jones filed a motion to terminate spousal support, and stopped making payments.
Both parties sought custody of Christopher and contested the possession of household items, including artwork, and the payment of child and spousal support. The case was tried to Magistrate Joel F. Sacco on twenty days between April 1997 and October 1997: April 15, 1997; June 9, 12, and 18, 1997; September 15, 16, 18, 22, 23, 24, and 25, 1997; and October 14, 15, 20, 21, 22, 23, 24, and 27.
The couple disputed nearly everything throughout the proceedings, and apparently communicated with each other only through their lawyers or written notes, generally imparting necessary information concerning the care of their son. Their inability to cope with each other ultimately led to child custody exchanges at a local police station, and Ms. Hampton-Jones was found in contempt of visitation orders for interfering with Mr. Jones's custody rights on holidays and when she went on out-of-town trips. Despite the couple's animosity toward each other, a court-appointed expert testified, and the evidence generally showed, that each was a capable, loving, and appropriate caregiver for their son. As the proceedings continued, the magistrate suggested shared parenting as an option, and the parties submitted competing plans.
The May 22, 1998, magistrate's decision recommended the adoption of Ms. Hampton-Jones's shared parenting plan with certain modifications, fixed her income at $75,000 for child support computations, and awarded Mr. Jones twelve months of spousal support at $500 per month, in addition to unpaid temporary support under the earlier pretrial order. He also determined that she should pay Mr. Jones an undetermined amount in attorney's fees that resulted from her acts of contempt, and that she pay $6,000 of his attorney's fees as spousal support. It is unclear whether the entire award was intended to be $6,000 or whether the fees owing from the contempt remained to be determined. The property distribution provided two alternatives for dividing the couple's disputed art collection:
 The art work shall be divided as per the oral understanding which the parties reached during a mediation with this Magistrate. Should either party not agree to this division of the art work, then in that event, the parties shall alternate selecting one piece of art work beginning with the individual who wins a coin toss.
The magistrate's decision determined that the art collection, [a]s listed on Defendant's Exhibit RRRR constituted marital property. Although the magistrate included findings of fact and conclusions of law with the initial decision, Ms. Hampton-Jones moved under Civ.R. 53(E)(2), and the magistrate re-issued the decision on June 1, 1998.
Ms. Hampton-Jones filed objections to the decision which were supplemented, by leave, on December 24, 1998. She objected, among other things, to: (1) the consideration and adoption of a shared parenting plan, arguing that it was both procedurally and substantively flawed; (2) the computation of her annual income as $75,000 for child support purposes, instead of her then-current salary of $60,000; and (3) the awards of spousal support and attorney's fees. She also raised general objections to the property distribution, claiming that the magistrate failed to consider all aspects of the parties' property, erred in determining the value of assets, and divided the property arbitrarily and in conflict with the evidence. Her objections to the property distribution, however, did not point to specific facts showing the magistrate's errors in valuation or distribution, nor did her objections identify the aspects of the parties' property the magistrate failed to consider.
On August 31, 1999, the judge overruled the objections, and adopted the magistrate's report with certain modifications, and included an order that Mr. Jones submit, for approval, a shared parenting plan incorporating the magistrate's modifications. He determined that Mr. Jones incurred $3,500 in attorney's fees as a result of Ms. Hampton-Jones's contempt of court. The judge also approved the additional award of $6,000 in attorney's fees as spousal support and, apparently included the $3,500 award within that amount, because he did not order it as a separate payment.
Mr. Jones submitted the modified shared parenting plan for approval and, on November 1, 1999, the judge entered a final judgment of divorce. Ms. Hampton-Jones moved for new trial, arguing that the judgment entry improperly contained a document itemizing the proposed division of the art collection which Mr. Jones had obtained through an improper ex parte contact with the magistrate. The motion did not object to the judgment entry's alternative method for distributing the art collection if the couple did not agree to the proposal outlined in that document, nor did the motion object that the document included Ms. Hampton-Jones's separate artwork in the distribution. She also argued that the trial, held over twenty days over a six-month period, was so irregular that a new trial was required, and that the judge had failed to allocate two outstanding debts in the division of marital property. The judge denied her motion for a new trial, and we consolidated Ms. Hampton-Jones's appeals from both the judgment and the denial of new trial.
Before addressing the assignments of error, we must first determine whether this appeal can go forward at this time. Only days before oral argument this court was informally notified that Mr. Jones had filed a Chapter 7 bankruptcy petition five months before on January 31, 2001. Mr. Jones advised that our review is subject to the automatic stay provisions of federal bankruptcy law, Section 362, Title 11, U.S. Code, which states, in relevant part, as follows:
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title * * * operates as a stay, applicable to all entities, of —
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; * * *.
The automatic stay is intended to prevent creditors from obtaining judgments against a bankrupt debtor in actions outside the bankruptcy proceeding, and is therefore interpreted only to prohibit actions against the debtor.[1] Where the debtor has initiated a suit that would enhance the property of the estate, the automatic stay does not apply.[2]
Courts generally do not consider the parties' status on appeal to determine whether the action is brought by or against the debtor, but instead consider the parties' status at trial.[3]
Although Mr. Jones was named as the defendant in the original complaint, he is also a counterclaimant, and as such is not subject to the stay.[4] Because the final judgment was in his favor and will enhance the property of the bankruptcy estate, we are in effect reviewing a judgment granted on the counterclaim filed by Mr. Jones, rather than on the complaint filed against him[5]. Therefore, the automatic stay provisions do not apply.[6]
The first three of the ten assignments of error can be addressed together:
 I. THE TRIAL COURT ERRED IN CREATING AND ADOPTING ITS OWN SHARED PARENTING PLAN.
 II. THE TRIAL COURT ERRED IN AWARDING SHARED PARENTING.
 III. THE SHARED PARENTING PLAN ORDERED BY THE TRIAL COURT IS NOT IN THE BEST INTEREST OF THE MINOR CHILD.
Ms. Hampton-Jones basically contends that the judge's shared parenting plan is not in her son's best interest because the evidence showed his parents are unable to cooperate. We agree that a judge has no authority to create a shared parenting plan, or to adopt modifications that have not been submitted by a party.[7] His power is limited to reviewing submitted plans and adopting, rejecting, or suggesting changes to those plans[8] and, although it follows that a judge cannot force a party to submit a shared parenting plan that incorporates suggested changes, R.C.3109.04(D)(1)(a)(ii) states that a judge may order each parent to submit appropriate changes * * * to meet the court's objections[.] A complete reading of this division makes clear, however, that the failure to comply with such an order will result in nothing more than the rejection of shared parenting.
The magistrate's decision recommended adopting the plan submitted by Ms. Hampton-Jones with modifications. Neither party submitted a modified shared parenting plan between the magistrate's June 1, 1998 decision and the judge's August 31, 1999 decision ordering Mr. Jones to submit a shared parenting plan incorporating the terms outlined in that decision. While Ms. Hampton-Jones is correct in pointing out that no party can be forced to submit a shared parenting plan with specific terms, Mr. Jones submitted the modified plan without objection. We may assume he was aware of his ability to refuse the judge's order without being found in contempt of court and, while the statutory language (and hence, the judge's order) might be inapt, it does not appear Mr. Jones was improperly forced to submit the modified plan. In this circumstance, Ms. Hampton-Jones has no standing to object to the judge's order.
She next claims the judge violated R.C. 3109.04(G) and her due process rights when he granted Mr. Jones leave to file a shared parenting proposal after trial had begun because she assumed each wanted sole custody and she was prevented from addressing shared parenting at trial. R.C. 3109.04(G) does not create an inflexible rule requiring all shared parenting plans to be submitted thirty days before trial — a judge has discretion to grant leave to file an untimely plan, as long as due process rights are protected by allowing the opposing party adequate opportunity to address the issue and present relevant evidence at trial.[9] Mr. Jones submitted his shared parenting plan, along with a request for leave to submit it, on September 17, 1997, which the judge granted on September 24, 1997. The magistrate addressed the shared parenting issue on October 14, 1997, and informed the parties he would allow them to recall witnesses in order to address shared parenting issues, if necessary, especially since Ms. Hampton-Jones had rested her case. The trial continued over another eight dates spanning two weeks.
Because Ms. Hampton-Jones objected to the grant of leave and threatened to move for a mistrial, Mr. Jones withdrew his plan, but she then filed her own shared parenting plan, with accompanying request for leave to do so, on October 20, 1997, and Mr. Jones was then allowed to re-submit his plan for consideration as well. Again, under the circumstances, Ms. Hampton-Jones has no standing to object to the judge's consideration of shared parenting. The parties were aware of the issue during trial, and were allowed the opportunity to address it, satisfying Harris, supra. She filed her plan after Mr. Jones had withdrawn his, and cannot claim that her plan was submitted only in response. Shared parenting would have been a dead issue if she had not submitted her plan. We also note that Mr. Jones's withdrawal of his plan, and her subsequent submission of a plan, were extensively discussed and argued before the magistrate, and the shared parenting issue would have been moot if Ms. Hampton-Jones had withdrawn her plan at that time, but she chose not to do so.
Finally, she submits that shared parenting is not in her son's best interest and, although the magistrate noted the parents' lack of cooperation, he found that each had a good relationship with the child and each worked to be a good parent. Despite their disagreements, he believed that they would be able to accommodate their differences for the benefit of their son.
The best interest determination is uniquely within the discretion of the judge and, without compelling evidence of arbitrary or unreasonable decisionmaking, we will defer to that discretion.[10] The best interest determination is not only fact-specific, but is highly dependent on the assessment of witness credibility and demeanor, factors that we are unable to review.[11] Therefore, despite evidence that these parents have difficulty cooperating, even for the benefit of their son, the judge was within his discretion in determining that incidents of strife did not outweigh their desire or ability to be good parents, and to work together for their child's sake. Moreover, because Ms. Hampton-Jones unilaterally submitted a shared parenting plan, and the couple's lack of cooperation was often initiated by her failure to comply with court orders regarding visitation, the judge was within his discretion in overruling her objections to the plan when Mr. Jones had accepted it without objection. The first three assignments of error are overruled.
 IV. THE TRIAL COURT ERRED IN ORDERING MS. HAMPTON-JONES TO PAY CHILD SUPPORT TO MR. JONES OF TWO HUNDRED AND SIX DOLLARS PER MONTH.
Ms. Hampton-Jones claims the judge improperly set her income at $75,000 per year when computing her child support obligation, when the evidence showed her 1997 income was only $60,000 per year. He arrived at the figure by averaging her current CCMG salary with her 1996 salary of $90,000. Although she testified that in 1997 her parenting duties reduced her time at work and her salary was reduced by $30,000 so her firm could hired an additional employee, the judge found that since the Plaintiff and her partner set their own salaries, there was not sufficient evidence presented for this Court to conclude that the Plaintiff's salary had to be reduced to this level. He then found it appropriate to average her income from 1996 and 1997 pursuant to R.C. 3113.215(B)(5)(h), and arrived at the $75,000 figure.
Determining income was a factual determination within the judge's discretion,[12] and we cannot say he abused that discretion by averaging income for these years. Although Ms. Hampton-Jones contends that averaging was an improper way to impute income to her without expressly finding that she was voluntarily underemployed, the facts sufficiently show that her income was variable, and thus appropriate for averaging.[13]
 V. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED MS. HAMPTON-JONES TO PAY SPOUSAL SUPPORT TO MR. JONES.
In an agreed journal entry prior to trial, the judge ordered Ms. Hampton-Jones to pay Mr. Jones $500 per month as temporary spousal support, the magistrate's opinion recommended he receive another twelve months of support at the same rate, the judge adopted the magistrate's decision and ordered payment of that monthly support owing from the date of commencement through June 1, 1998, and an additional twelve months of support from June 1998 through May 1999. Ms. Hampton-Jones submits this amounts to an award of thirty-six months of spousal support, when the parties lived together in marriage only forty-five months.
R.C. 3105.18(C)(1) grants a judge discretion to award spousal support after assessing a number of factors, including:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages, and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
When making an award of spousal support, the judge is required to consider all of the listed factors, and must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law.[14] The magistrate made factual findings concerning the factors listed in 3105.18(C)(1) and found, inter alia, that neither party would realize a significant benefit from the property division, that Ms. Hampton-Jones's income is greater than Mr. Jones's, that her earning ability is currently greater than his, and that the parties had established a middle-class comfortable standard of living during the marriage. The magistrate devoted considerable space to a discussion of the couple's individual work histories, pointing out that Ms. Hampton-Jones's career had blossomed while Mr. Jones had been unemployed or underemployed for over a year before taking the position with United Way. He also found that the parties' marriage was relatively short, that Mr. Jones was employed at the time of the divorce, possessed an advanced degree in business, that he had a retirement program at work, had received a lump sum payment from Ms. Hampton-Jones's Janus Fund, and was entitled to half of her 401(K) retirement plan as part of the property settlement.
From these findings he recommended that Mr. Jones be awarded twelve months' spousal support at $500 a month, in addition to the temporary spousal support already awarded, and the judge adopted that decision. We find these facts sufficient to show the basis for the magistrate's and judge's decisions, and sufficient to show that the award of spousal support was within the judge's discretion. The temporary award seemed most affected by Mr. Jones's employment difficulties at that time, and continuing the award for another twelve months could reasonably be seen as allowing him a continued opportunity to regain stability after the period of unemployment. On the facts and circumstances shown, we cannot find this to be an abuse of discretion and the fifth assignment of error is overruled.
The sixth assignment states:
 VI. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN [SIC] BY AWARDING ADDITIONAL SPOUSAL SUPPORT IN THE FORM OF AN ATTORNEY FEE AWARD WHERE THERE WAS NO BASIS IN LAW OR FACT TO SUPPORT SUCH AN AWARD.
Prior to final judgment, Mr. Jones had filed at least ten motions to hold Ms. Hampton-Jones in contempt of court, the magistrate found her in contempt for failing to comply with support and custody orders and recommended that she pay those attorney's fees that arose as a result of the act of contempt. The magistrate's decision, however, did not specify the act or acts of contempt, nor did he identify which attorney fees arose from the contempt. He then determined, without explanation, that Mr. Jones was entitled to an award of $6,000 in attorney fees as spousal support, but did not state whether this award included fees owed as a result of the contempt findings.
The judge added to these findings by stating that Mr. Jones's lawyer incurred $3,500 in reasonable attorney's fees and, referring to an exhibit prepared by that lawyer in support of a general motion for attorney's fees, found that, of those fees, $3,500 resulted from the contempt. He also found Mr. Jones was entitled to additional fees, and awarded a total of $6,000 as spousal support. Although the decision appears ambiguous, the final judgment entry awards only the $6,000 mentioned as additional spousal support without further mention of the fees flowing from the contempt. Ms. Hampton-Jones claims that Mr. Jones was not entitled to an additional award of attorney's fees as spousal support, and that the judge failed to explain the basis for the additional award.
A judge has discretion to award reasonable attorney's fees as spousal support, utilizing the factors of R.C. 3105.18(C)(1), and must also determine that the fees requested are reasonable.[15] He must also determine whether the other party is able to pay the fees, and whether attorney's fees are necessary to ensure that a party is adequately represented.[16] As with other awards of spousal support, the record must show the basis for the award of attorney's fees itself and the amount awarded.[17] The judge's decision does not explain the amount awarded, nor does it explain whether the $6,000 award includes the $3,500 that resulted from the contempt sanctions and, if so, why the contempt sanctions were included as spousal support. Because there were no reasons given for awarding attorney's fees as spousal support or justifying the amount awarded, this issue must be remanded. On remand, the judge should consider not only whether and in what amount attorney's fees should be granted as spousal support, but should also distinguish between fees awarded as spousal support and those independently awarded for contempt or other sanctions. The sixth assignment of error is sustained.
The seventh assignment of error states:
 VII. THE TRIAL COURT ERRED BY INCLUDING IN THE JUDGMENT ENTRY OF DIVORCE PROVISIONS THAT WERE GAINED THROUGH IMPROPER EX PARTE COMMUNICATIONS.
Here Ms. Hampton-Jones contends that, prior to the entry of final judgment, Mr. Jones contacted the magistrate ex parte and arranged for the final entry of divorce to include an exhibit that documented a mediation agreement concerning the division of the couple's art collection and restrictions on changing their child's surname. Because the provision concerning the child's surname is included in the shared parenting plan as well as the judgment entry, we fail to see any prejudice from its inclusion, and no evidence to show how inclusion of that clause was error or an abuse of discretion. Therefore, that portion of the assignment is overruled.
The final divorce entry stated that the artwork would be divided pursuant to the oral agreement of the parties reached during a mediation on that issue or, in the alternative, via the coin flip arrangement. The entry further stated that the substance of the oral agreement was set forth in an attached exhibit. Ms. Hampton-Jones stated, through the affidavit of her lawyer, that during an attorneys' conference prior to the judge's ruling, the judge had agreed not to include further information pertaining to the oral agreement mentioned in the judgment entry of divorce, that Mr. Jones, thereafter, improperly obtained and submitted a document purporting to set forth the terms of the oral agreement dividing the artwork, and that the judge then improperly included the document as part of the journal entry.
If ex parte contact occurred, we would find it harmless because the art collection provision contained a clause allowing either party to opt out of the stated distribution in favor of a coin-flip arrangement taking turns choosing pieces. If the couple disagreed about how to divide the artwork (which, apparently, they did), they would have to resort to the coin flip arrangement anyway. Therefore, even if the ex parte contact occurred, no prejudice can be shown.
Furthermore, the improper conduct allegedly occurred with the judge's full knowledge, because Ms. Hampton-Jones claimed that the judge was informed, at that attorneys' conference, that Mr. Jones had contacted the magistrate to obtain the exhibit, that he agreed to omit the exhibit, but included it in the judgment entry anyway. Under these circumstances it would seem that claims of improper ex parte contact with the magistrate were addressed and resolved during the attorneys' conference, and that part of her complaint is against the judge because he included the exhibit after stating he would not. She has not, however, addressed this criticism on appeal but, had she, the factual allegations are peculiarly within the knowledge of the judge, who considered them when she moved for new trial and denied that motion. The seventh assignment of error is overruled.
The eighth assignment states:
 VIII. THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THE DIVISION OF MARITAL PROPERTY.
Ms. Hampton-Jones claims it was error to distribute the entire art collection as marital property when the evidence showed that some pieces were her separate property, and to fail to allocate a second mortgage loan, another loan, and a credit card bill as marital debt. The art collection stated that the artwork was marital property as listed on Exhibit RRRR. That exhibit identified some pieces as her separate property and, in her objections to the magistrate's decision, she did not explain which pieces were erroneously included as marital property.
Indeed, her objections to the property division stated, in their entirety:
 The Court's Magistrate failed to properly consider all aspects of the parties' property and even failed to properly divide various assets of the parties; i.e., artwork and personal property and furnishings.
 Furthermore, the Magistrate's assessment of values placed upon the assets was not supported by the evidence and is contrary to the principles embodied in Ohio Revised Code Section 3105.171.
On December 24, 1998, after over six months of leave to obtain transcripts and submit further objections, Ms. Hampton-Jones still failed to identify the pieces of art in dispute, and made no mention whatsoever of any unallocated marital debt, as she filed the following supplemental objections concerning the property division:
 Pursuant to R.C. 3105.171, the magistrate was required to determine what constituted marital property and what constituted separate property. Upon making such a determination, the [sic] was required to divide the marital and separate property equitably between the spouses. The law requires that the division of marital property shall be equal.
 In this case, the magistrate's valuations were arbitrary and in conflict with the evidence.
 Accordingly, the magistrate abused his discretion in making the division of property.
This record shows that she failed to specifically raise either the art collection issue or the failure to allocate specific loans as marital debt in her objections to the magistrate's decision and we find the issue waived.[18] The eighth assignment of error is overruled.
 IX. THE TRIAL COURT ERRED IN EXECUTING THE JUDGMENT ENTRY OF DIVORCE PREPARED BY MR. JONES' COUNSEL.
The final judgment entry of divorce reads, in pertinent part, as follows:
 * * * Plaintiff shall pay to the Defendant child support in the amount of Two Hundred, Six Dollars, Seventy-two Cents ($276.72), which sum includes 2% poundage, per month through the Cuyahoga Support Enforcement Agency. (Emphasis sic.) * * *
Ms. Hampton-Jones requests that this court correct this clerical error to reflect a child support payment of $206.72 instead of $276.72. Although we agree there does appear to be an error requiring correction here, we do not believe it necessary or appropriate to raise such errors on appeal prior to seeking their correction by the judge under Civ.R. 60(A). This issue can be addressed without this court's intervention. The ninth assignment of error is overruled.
The tenth and final assignment of error states:
 X. THE TRIAL COURT ERRED IN DENYING MS. HAMPTON-JONES' MOTION FOR A NEW TRIAL.
The bases for seeking a new trial were Ms. Hampton-Jones's claims of ex parte contact with the magistrate, the judge's failure to allocate certain credit card and loan debts as marital debt, and the prejudicial irregularity owing to the diffuse nature of trial proceedings. As noted supra, because she failed to establish prejudice with respect to the ex parte contact, a new trial under Civ.R. 59(A) would not be warranted. Secondly, her failure to specifically object to the magistrate's report concerning the credit card and loan debts is a waiver of error. Finally, even though the conduct of trial proceedings appears confusing and inefficient, she has not shown how the irregularities caused her prejudice. Moreover, at least part of the irregularity can be attributed to the parties themselves, whose lawyers presented evidence and testimony on ownership of kitchen utensils, $10 insurance copayments, and whose frequent flyer miles were used to take family vacations. The denial of a motion for new trial is within the judge's discretion, and nothing on this record indicates an abuse of that discretion. This assignment of error is overruled.
The judgment is affirmed in part, vacated with respect to the award of attorney's fees, and remanded for clarification of the bases of the award.
It is ordered that the parties shall bear their own costs costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Division of Domestic Relations, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and JAMES J. SWEENEY, J., CONCUR.
 __________________________ ANNE L. KILBANE JUDGE
[1] Farley v. Henson (C.A.8, 1993), 2 F.3d 273, 274.
[2] Id.
[3] Id., at 275.
[4] In re Regal Constr. Co., Inc. (Bankr.Ct.Md. 1983), 28 B.R. 413,416.
[5] Id.; Farley, supra.
[6] See, also, Section 362 (b)(3), Title 11, U.S. Code.
[7] R.C. 3109.04(D); McClain v. McClain (1993), 87 Ohio App.3d 856,857, 623 N.E.2d 242.
[8] Id.
[9] Harris v. Harris (1995), 105 Ohio App.3d 671, 674, 664 N.E.2d 1304,1306.
[10] Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124, 661 N.E.2d 1008,1010.
[11] Id.
[12] Barnhart v. Barnhart (Dec. 9, 1998), Summit App. No. 18868, unreported,
[13] Id.
[14] Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraphs one and two of the syllabus.
[15] McCoy v. McCoy (1993), 91 Ohio App.3d 570, 583-84, 632 N.E.2d 1358,1366-67.
[16] Id.; R.C. 3105.18(H).
[17] Swanson v. Swanson (1976), 48 Ohio App.2d 85, 91, 2 O.O.3d 65, 355 N.E.2d 894, 898-99.
[18] Civ.R. 53(E)(3)(b); Glazer v. Glazer (Aug. 12, 1999), Cuyahoga App. No. 75937, unreported.